IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTOPHER EUGENE COOK,           )
                                   )
                Plaintiff,         )
                                   )
        v.                         )    1:07CV31
                                   )
MR. BOYD BENNETT, MR. JAMES PIERCE,)
and, MS. DENE PITTS,               )
                                   )
                Defendants.        )

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF MAGISTRATE JUDGE ELIASON**

Plaintiff, a prisoner of the State of North Carolina, seeks relief pursuant to 42 U.S.C. § 1983. The facts in the case, as set out in the complaint, are as follows. Beginning in October of 1994, and continuing through the present, Plaintiff has been incarcerated in the North Carolina prison system serving a "Class C" life sentence for second-degree murder. Persons serving this type of sentence are eligible for parole after ten years. Plaintiff states that he has been parole eligible since January of 2005. However, he has been denied parole at his three annual parole hearings. Although the denials of parole are the root cause of this lawsuit, Plaintiff's allegations are more complex.

According to Plaintiff, North Carolina parole guidelines strongly discourage, but do not forbid, paroling a prisoner who is housed in a medium security facility. Plaintiff is housed in such a facility. Therefore, in order to have a meaningful chance to be paroled, Plaintiff contends he will have to first spend time incarcerated in a minimum security facility. He is eligible for a

transfer to a minimum security prison, but has thus far been unsuccessful in being promoted to one.

Plaintiff states that North Carolina prison regulations require that a custody review be conducted every six months. A full review which results in a promotion in custody level consists of six levels. The first four levels take place in the prison where the prisoner is housed. They involve reviews from a case manager, a unit manager, a facility classification committee, and, finally, a prison administrator.

In this case, that administrator is alleged to be Defendant Dene Pitts. If the prison administrator does not recommend a promotion in custody level, the review ends at that point and never proceeds to the fifth and sixth levels. On the other hand, if a promotion is recommended, the review must then proceed for a divisional review at the North Carolina Department of Correction (NCDOC) headquarters. The sixth level of review is then conducted by a Regional Director. In this case, that person is Defendant James Pierce. Defendant Boyd Bennett is the Director of Prisons for the NCDOC. He is alleged only to have control of the promulgation of regulations controlling the process just described, as opposed to being part of any actual review.

Plaintiff alleges that he has been eligible for promotion to minimum custody since April of 2000. His bi-annual reviews are conducted on April 1st and October 1st of each year. He also alleges that he has an excellent record in prison, having incurred only one infraction, paid off $3,403.00 in restitution, and scored

"low risk" on a risk assessment test. Apparently based on these things, Defendant Pitts approved Plaintiff for a promotion to minimum custody during his first custody review on April 1, 2005. Plaintiff does not state what occurred at the divisional review, but apparently his promotion was also approved there. The review was then passed on to Defendant Pierce who denied the promotion. He did so while stating that Plaintiff needed further observation and had not served enough time on his life sentence.

At the next three custody reviews, conducted on October 1, 2005, April 1, 2005, and October 1, 2006, Plaintiff was not approved for promotion to minimum custody by Defendant Pitts. This was despite the fact that he incurred no new infractions during this time-period. Plaintiff alleges that the reason behind Defendant Pitts' change in her recommendation is that Defendant Pierce has a personal policy under which he refuses to provide full minimum custody reviews more than every 24 months. Plaintiff complains that this is contrary to the bi-annual reviews required by the NCDOC's regulations. He alleges that in other regions of the State, inmates serving Class C life sentences do receive meaningful custody reviews every six months. He also claims that once they are approved for minimum custody at the facility level, this recommendation does not change unless they receive a subsequent infraction.

## Claims

Based on the facts alleged in the complaint, Plaintiff raises three claims for relief. First, he contends that he has a liberty

interest in promotion to minimum custody and that this interest is protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Second, he asserts that the promulgation and application of the policies governing the promotion of felons to different custody levels subject him to arbitrary and personal judgments made by prison authorities. He argues that this also violates his due process rights, as well as his equal protection rights, because a liberty interest is involved. Finally, he alleges that Defendant Pierce's refusal to abide by NCDOC policy and provide him with meaningful bi-annual custody reviews violates his due process and equal protection rights. Plaintiff seeks only declaratory and injunctive relief.

## **Discussion**

There are two pending motions in the case: a motion to dismiss by Defendants and a motion for sanctions filed by Plaintiff. Turning first to the motion to dismiss, it is denominated as one brought pursuant to Fed. R. Civ. P. 12(b)(6). As Plaintiff correctly points out, a motion made under that subsection must be filed "before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Defendants did not do that in this case. They filed an answer to the complaint on June 20, 2007. Then, on July 2, 2007, and without explanation, they filed an amended answer. The motion to dismiss was filed months later on February 18, 2008. However, as Plaintiff also correctly points out, there is a solution to this problem, which is to treat the

motion as one filed under Fed. R. Civ. P. 12(c) for judgment on the pleadings. The Court will so construe the motion.

Defendants' first ground in support of the motion to dismiss is that Plaintiff has failed to state a claim upon which relief may be granted. The memorandum supporting the motion begins the argument by citing the standards for dismissal in the courts of North Carolina. Because Plaintiff's claims are filed in federal court and based on federal law, it is not clear why the standards cited would control here. Defendants cite no authority showing that they would. Nor have Defendants offered case law showing that the North Carolina standards for dismissal are identical to the federal standards so that the Court could follow the standards cited. It is expected that this will not be repeated by counsel in the future.

In any event, the motion to dismiss cannot succeed. The Court must assume that the allegations in the complaint are true and construe them in the light most favorable to plaintiff. <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 & 304 (4th Cir. 2008).[1] However, the

---

[1] The facts used to decide the motion to dismiss will be those set out in the complaint. Defendants include in their brief supporting the motion to dismiss a section describing "Defendants' Evidence." This section of the brief contains no citations to any evidence in the record. The Court is also not aware that Defendants have submitted any admissible evidence such as deposition testimony or affidavits. Further, if any evidence had been submitted, the motion to dismiss would have had to be converted to one for summary judgment in order to allow the evidence to be considered. Fed. R. Civ. P. 12(d). This would have necessitated allowing Plaintiff to conduct discovery, a process Defendants have taken steps to deny him. This will be discussed more later. Because of the multiple deficiencies in Defendants' insertion of "evidence" into their brief, their allegations will not be considered to any extent they do not match what is alleged in the complaint.

-5-

Court does not have to accept as true legal conclusions stated as facts. Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1965 (2007)(citation and footnote omitted).

The due process components of Plaintiff's claims turn on his assertion that he has a liberty interest in promotion to minimum custody. He bases this on the fact that he must be promoted to minimum custody in order to have a realistic chance at being paroled. Plaintiff argues that the discretionary policies of the NCDOC regarding promotion, in conjunction with Pierce and Pitts' application of those policies, are improperly denying him that liberty interest.[2]

Unfortunately for Plaintiff, the case law is not in his favor on this point. The parties rely on different cases to press their points. Defendants cite to the case of Sandin v. Conner, 515 U.S. 472 (1995). That case dealt not with prisoners' general custody levels, but with a punitive assignment to segregated confinement. It held that no liberty interest was implicated, and hence the Due Process Clause did not come into play, where the disciplinary confinement did not "present a dramatic departure from the basic conditions of [the prisoner's] indeterminate sentence." Id. at 485. However, it explicitly left an open question regarding a

---

[2] It would seem that if Pierce and Pitt are violating state law, Plaintiff should bring the matter to the attention of the state courts.

situation where a finding of misconduct would "inevitably affect the duration of [a prisoner's] sentence." Id. at 487. It did state that a prisoner could not invoke the Due Process Clause where there was only a "chance" that discipline would eventually affect his parole. Id.

Plaintiff cites the more recent case of Wilkinson v. Austin, 545 U.S. 209 (2005). There, the United States Supreme Court held that the Due Process Clause was implicated by the decision to house a prisoner in a "Supermax" facility. It based this holding on the fact that the harsh conditions in that facility did constitute the type of "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'" that raised a liberty interest and due process concerns. Id. at 223(quoting Sandin, 515 U.S. at 484). Among the factors noted in reaching this conclusion were the physical conditions of confinement, the separation from human contact, the lack of environmental or sensory stimuli, the fact that the Supermax placements were for an indefinite period of time, and the fact that parole eligibility was lost while a prisoner was housed in the Supermax facility. Id. at 214-15. Thus, while parole eligibility was mentioned as a factor in the decision, it was only one of several.

The problem with applying both Sandin and Wilkinson to the present case is that Plaintiff is not alleging that he is being confined in a medium security prison as punishment for some misdeed other than his original crime. He is also not being placed in segregation or a Supermax facility. He is merely assigned to a

-7-

medium security facility and such a facility is part of normal prison life. Were his custody level really the issue in the case, he would clearly have no liberty interest at stake. <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976)(transfer from low to maximum security facility is within normal limits of confinement).

Plaintiff instead claims that his liberty interest in being placed in a minimum security facility arises because it affects his ability to be paroled. He alleges that he has no meaningful chance at parole as long as he is confined in a medium security facility. <u>Sandin</u> and <u>Wilkinson</u> both touch on this issue, but do not definitively answer it. Instead, taken together, they really only stand for the propositions that parole eligibility is a factor to be considered in prison discipline due process cases and that absolute denial of parole as part of discipline makes it more likely that a liberty interest will arise, while discipline causing only a "chance" of parole denial is less likely to create a liberty interest. They do not address whether or not a liberty interest can arise from a nonpunitive custody assignment where the custody level will affect parole.

The answer to that last question is best found by determining whether Plaintiff has a liberty interest in parole. If he does, it might follow that he would then have a liberty interest in factors

-8-

affecting parole.³ If he does not, then he has no liberty interest onto which he can bootstrap a custody level argument.

The United States Court of Appeals for the Fourth Circuit has addressed the issue of whether a prisoner has a liberty interest in parole by explaining that:

> "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979). This is because "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." Id. at 7, 99 S.Ct. at 2104, quoting Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). The absence of a constitutional right to parole means that a state has no duty to establish a system of parole, id., and if it chooses to do so, federal courts should allow a state's parole authorities "a wide range for experimentation and the exercise of discretion." Franklin v. Shields, 569 F.2d 784, 800 (4th Cir.1977) (en banc), cert. denied, 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978). "Moreover, to insure that the state-created parole system serves the public-interest purposes of rehabilitation and deterrence, the state may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority." Greenholtz, 442 U.S. at 7-8, 99 S.Ct. at 2104.

Vann v. Angelone, 73 F.3d 519, 521 (4th Cir. 1996).

---

³It is worth noting that there is only the possibility that a liberty interest in a prisoner's custody level could arise from a liberty interest in parole. Neither party has cited a case addressing this point and the Court is not deciding this issue. If such an interest can exist, it would likely only be present in a situation similar to that in Wilkinson where the custody classification absolutely precludes parole. It is much more doubtful that a liberty interest could arise where, as here, a custody classification arguably lessens the chance of parole but does not eliminate eligibility entirely. As noted earlier, Plaintiff argues only that North Carolina parole guidelines discourage parole from a medium security facility. They do not forbid it.

-9-

This is not to say that there can never be a liberty interest in parole. There certainly can be where one is created by state statutes. Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex et al., 442 U.S. 1 (1979). However, even where this occurs, the amount of due process required is minimal. The Fourth Circuit requires only that authorities must "'furnish to the prisoner a statement of its reasons for denial of parole.'" Vann, 73 F.3d at 522 (quoting Franklin v. Shields, 569 F.2d 784, 801 (4th Cir. 1977)).

Here, Plaintiff has not alleged or shown that state statutes create a liberty interest in parole. But even assuming for the sake of argument that he has a liberty interest in parole consideration and that this could be extrapolated to give him a liberty interest in promotion to minimum custody[4], his due process rights were still not violated. This is because Plaintiff was provided with a statement of the reasons why his parole was denied. He was also given a statement of the reasons why his promotion to minimum custody was denied. Although he may not agree with those reasons, his due process rights were satisfied because he could not be entitled to more due process for the custody decision than for a parole decision. Plaintiff cannot prevail on his due process claims given the facts set out in his complaint. Defendants' motion to dismiss Plaintiff's due process claims should be granted.

---

[4]Again, this issue does not need to be decided.

Defendants' second ground for dismissal pertains only to Defendant Bennett. They contend that he should be dismissed because he is only a supervisor and the doctrine of respondeat superior does not apply in cases brought under § 1983. Although this argument would appear to have no merit given that the complaint clearly alleges actions by Bennett himself in promulgating the challenged policies and regulations, the issue is really moot. All allegations pertaining to Bennett are connected with Plaintiff's due process claims, not Plaintiff's equal protection claims which will be discussed next. Therefore, dismissal of the due process claims will end all claims against Defendant Bennett. Defendants' respondeat superior argument does not need to be addressed further.

Turning now to Plaintiff's equal protection claims, Defendants' brief does not address them. The reason for this is not apparent, but the failure to address them means that only minimal discussion is required at this point. Plaintiff mentions equal protection twice in his claims for relief. The first of these claims that his equal protection rights were somehow violated by NCDOC's policies and regulations governing the promotion of felons in the prison system. However, this is not possible. Whatever Plaintiff may think of the policies, they apply to all felons in the state. He would not be treated differently from other felons by the policies. Therefore, he cannot state a claim for relief based on the faces of the policies. Giarratano v. Johnson, 521 F.3d 298 (4th Cir. 2008)(the Equal Protection Clause

-11-

requires only that similarly-situated individuals be treated alike).

Plaintiff's second equal protection allegation is a different matter because it is based on the application of the policies. Plaintiff contends that Defendant Pierce has a personal policy which ignores or alters the NCDOC policies and only gives him a meaningful custody review very two years, instead of every six months. He claims that prisoners in regions not controlled by Pierce are reviewed in a different manner. He also alleges that Defendant Pitts carried out her evaluations of Plaintiff in a manner that effectuated Pierce's personal policy variation. Defendants do not address these claims in their motion to dismiss and they are not obviously defective on their face. It is not the Court's duty to raise arguments for the parties. For this reason, these claims can proceed. Defendants' motion should be denied to the extent that it seeks dismissal of Plaintiff's third claim for relief.

The continuation of the case on Plaintiff's third claim for relief means that a discovery schedule will need to be set for that claim. This is particularly true given that it may well turn on factual issues regarding Pierce's policies and practices, Pitt's aid in effectuating those practices, and the comparative practices in other areas of North Carolina. The setting of that schedule will be done following a ruling on the recommendation that all of Plaintiff's due process claims and his equal protection claim based on the NCDOC's policies themselves be dismissed.

-12-

The issue of discovery also brings up the second motion pending before the Court--Plaintiff's motion for sanctions. A certain amount of background is necessary before the motion for sanctions can be discussed directly. Following the filing of the amended answer, the Court set the case on a standard discovery track with all discovery to be completed by January 18, 2008. Dispositive motions were to be filed by February 18, 2008. (Docket No. 30.) Following the entry of that order, Plaintiff did serve Defendants with written discovery. Defendants responded by moving for a protective order staying discovery. (Docket No. 31.) In the memorandum supporting that motion, they stated that (1) they had immunity from suit in their individual capacity, (2) they intended to raise this defense in their summary judgment motion to be filed by February 18, 2008, and (3) a stay in discovery was needed to protect Defendants from the burden of discovery until their defense could be raised. (Docket No. 32.) Defendants were granted the stay that they requested, with discovery being stayed even now.

Defendants did indeed file a dispositive motion on February 18, 2008. However, it was not the motion described in their request for a protective order. Rather than a motion for summary judgment, it was, as mentioned above, a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Not only this, but the defense of qualified immunity was not raised. Defendants actually state that they were sued only in their official capacity. This makes the doctrine of qualified immunity inapplicable. <u>Ridpath v. Board of Governors Marshall University</u>, 447 F.3d 292 (4th Cir. 2006). Worse

-13-

still, the motion addresses only two of three claims raised by Plaintiff in his complaint. This means that all discovery has been stayed in this case for months only to have Defendants raise a dispositive motion that is not what was forecast and that cannot end the case.

Based on the handling of the case, Plaintiff has filed a motion seeking sanctions against Defendants' attorney. (Docket No. 45.) In that motion, Plaintiff sets out the situation described above. He notes that he never sued Defendants in their individual capacities, that they were, therefore, never able to raise qualified immunity as a defense, and that he has now been prevented from conducting discovery for months based on their representation otherwise. He argues that Defendants' counsel failed to make a reasonable inquiry into the pertinent issues before pursuing the motion for a protective order. He then seeks sanctions under Fed. R. Civ. P. 26(g). His proposed sanctions, however, are only that the protective order be rescinded, that Defendants be compelled to answer his discovery requests, and that the Court "impose any sanction that [it] deems appropriate." (Docket No. 46.) For reasons that are not apparent, Defendants filed no response.

The handling of the case to this point, combined with Plaintiff's unopposed motion for sanctions, places the Court in a difficult position regarding the motion for sanctions. The actions of Defendants' attorney in handling the case fall far, far short of what is ordinarily acceptable. Also, Plaintiff's request is a reasonable one. He really seeks only to have what he has been

-14-

denied. Still, although Plaintiff's motion states that it is brought under Fed. R. Civ. P. 26(g), the nature of the motion reveals that it should really be viewed as one for harassing or vexatious litigation under Fed. R. Civ. P. 11(b) and 28 U.S.C. § 1927. Prevailing on such a motion would require a showing of bad faith by counsel. Chaudhry v. Gallerizzo, 174 F.3d 394, 410-11 (4th Cir. 1999). There are not sufficient grounds for a finding of bad faith in the present case. While the record certainly shows an unacceptable, and hopefully embarrassing, level of procedural inattentiveness by Defendants' counsel, there is no indication that the purpose of her actions was to harass Plaintiff, as opposed to issues of diligence and competence. The motion for sanctions will be denied.[5]

Based on the foregoing reasons,

**IT IS THEREFORE ORDERED** that Plaintiff's motion for sanctions (Docket No. 45) is denied.

**IT IS RECOMMENDED** that Defendants' motion to dismiss (Docket No. 39) be granted as to Plaintiff's due process claims and his equal protection claim based on the policies of the North Carolina Department of Corrections, that the motion to dismiss be denied as to Plaintiff's equal protection claim based on Defendants Pierce

---

[5] Although the motion for sanctions is being denied for a lack of bad faith, Plaintiff should be aware that his objective in making the motion, i.e. receiving an opportunity to conduct discovery, will likely be realized. The current recommendation is that one of Plaintiff's equal protection claims move forward. If that recommendation is adopted, the protective order will be vacated and Plaintiff will be given a chance to pursue discovery on his remaining claim. He will, of course, have to abide by this Court's discovery rules.

-15-

Case 1:07-cv-00031-JAB-DPD   Document 51   Filed 11/19/08   Page 15 of 16

and Pitts' applications of those policies which are alleged to deny Plaintiff custody reviews that are granted to prisoners in other regions of North Carolina.

                                       /s/ Russell A. Eliason
                                 **United States Magistrate Judge**

November 19, 2008